## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE; DNC SERVICES CORPORATION, ) ) ) ) | |
| Plaintiffs, ) ) | No. 08-cv-00639 (JDB) |
| v. ) ) | |
| FEDERAL ELECTION COMMISSION ) 999 E Street NW ) Washington, DC 20463, ) ) | |
| Defendant. ) | |

## FEDERAL ELECTION COMMISSION'S
## STATEMENT REGARDING THE COMMISSION'S STATUS
## AND THE COURT'S JURISDICTION

Plaintiffs Democratic National Committee ("DNC") and DNC Services Corporation have

brought this action under 2 U.S.C. § 437g(a)(8) of the Federal Election Campaign Act, 2 U.S.C.

§§ 431-55 ("FECA" or "Act"), alleging that the Federal Election Commission ("FEC" or

"Commission") has unlawfully failed to act on an administrative complaint filed by the DNC.

That complaint alleged that the purported withdrawal of Republican Senator John McCain from

the Presidential Primary Matching Payment Account Act ("Matching Payment Act"), 26 U.S.C.

§§ 9031-42, was unlawful.  The Commission is filing this statement to inform the Court of the

Commission's current status and to notify the Court that it may lack jurisdiction to decide this

case.  As discussed below, although the Commission currently lacks a quorum to vote to defend

this action, the Court has an independent obligation to establish its jurisdiction to hear plaintiffs'

claims.  The D.C. Circuit has held that actions alleging unlawful delay under 2 U.S.C.

§ 437g(a)(8) may not be brought until 120 days after the filing of an administrative complaint; plaintiffs here waited only 49 days.  It also appears that both plaintiffs may lack standing.

## I.    THE COMMISSION'S VOTING REQUIREMENT TO DEFEND THIS ACTION

Although 2 U.S.C. § 437c(f)(4) provides that the "Commission is authorized to appear in and defend against any action instituted under this Act," other provisions of the Act suggest that the Commission may need an affirmative vote of at least four of its members to defend an action brought under 2 U.S.C. § 437g(a)(8).  Section 437c(c) provides that certain Commission actions require the "affirmative vote of 4 members" and then specifies several of those actions, including those taken pursuant to 2 U.S.C. § 437d(a)(6) (emphasis added), which states:

> to initiate (through civil actions for injunctive, declaratory, or other appropriate relief), *defend (in the case of any civil action brought under section 437g(a)(8) of this title)* or appeal any civil action in the name of the Commission to enforce the provisions of this Act and chapter 95 and chapter 96 of title 26, through its general counsel.

Under 2 U.S.C. § 437c(a), the Commission was established as a six-member body, and no more than three members "may be affiliated with the same political party."  Currently, the Commission has only two Commissioners (affiliated with different political parties), so it cannot meet any four-vote requirements under the Act.  It is unknown whether the Commission will have a quorum by the time its answer is due in this case.  The undersigned counsel are therefore filing this statement to inform the Court of the Commission's current status.[1]

---

[1]    It is unclear whether it may be within the Court's power to afford *de facto* validity to any actions taken by the Commission's General Counsel on behalf of the Commission that would ordinarily require a four-vote majority vote by the Commission.  *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 142-43 (1976).

II.     BACKGROUND:  PLAINTIFFS' COMPLAINT

    A.     The Parties and the Matching Payment Act

The Federal Election Commission is the independent agency of the United States Government empowered with exclusive jurisdiction to administer, interpret, and civilly enforce the FECA, the Matching Payment Act, and the Presidential Election Campaign Fund Act, 26 U.S.C. §§ 9001-13, among others.  *See generally* 2 U.S.C. §§ 437c(b)(1), 437d(a), and 437g.

Plaintiffs Democratic National Committee and DNC Services Corporation are "jointly registered" as a "national committee" of the Democratic Party.  Complaint ("Compl.") Third ¶ 10.[2]  A national committee is "responsible for the day-to-day operation of [a] political party at the national level, as determined by the Commission."  2 U.S.C. § 431(14).  The Complaint states that the DNC, an unincorporated association, is the "governing body" of the party, and that it works to communicate the party's positions and to persuade citizens to vote for Democrats at the national, state, and local levels.  Compl. First ¶ 10.  The Complaint describes DNC Services Corporation as a non-profit corporation controlled by the DNC that "owns the assets, employs the staff and possesses the contractual rights" of the DNC, which "undertakes most of its business and financial activities through DNC Services Corporation."  Compl. Second ¶10.

The Matching Payment Act provides federal funding for eligible candidates during the presidential primary elections.  *See* 26 U.S.C. § 9033(a); 11 C.F.R. §§ 9033.1-9033.12 (2008).  Once eligibility is established, a candidate is entitled to receive payments from the Presidential Primary Matching Payment Account to match individual contributions up to $250.  *See* 26 U.S.C. § 9034.  The Treasury may begin paying amounts to which eligible candidates are entitled no earlier than January 1 of the presidential election.  *See* 26 U.S.C. §§ 9032(6), 9037.

---

[2]     Plaintiffs' Complaint includes three paragraphs numbered "10."

Candidates may use these public funds only to defray "qualified campaign expenses," which are defined as expenses lawfully incurred in connection with the campaign for their party's presidential nomination. 26 U.S.C. §§ 9032(9), 9042; 11 C.F.R. § 9034.4(a) (2008). In exchange for receiving these public funds, candidates agree to abide by an overall spending limit during the primary campaign period. 26 U.S.C. § 9035.

**B.    The Commission's Administrative Complaint Procedure**

The FECA permits any person to file an administrative complaint with the Commission alleging a violation of the Matching Payment Act. 2 U.S.C. § 437g(a)(1). When a complaint is received, the Commission notifies the respondents named in the complaint, who are given an opportunity to respond. *Id.* After reviewing the record, responses, and the General Counsel's recommendation, the Commission may proceed to vote whether there is "reason to believe" a violation has occurred. 2 U.S.C. § 437g(a)(2). If four or more Commissioners find that reason to believe exists, the Act provides that the Commission may investigate the "alleged violation, which may include a field investigation or audit, in accordance with the provisions of [section 437g(a)]." *Id.*

At the conclusion of the investigation, the Commission's General Counsel may recommend that the Commission vote on whether there is probable cause to believe that the Act has been violated. 2 U.S.C. § 437g(a)(3). The General Counsel provides respondents with a brief stating her position on the issues, and provides respondents an opportunity to respond. *Id.* The General Counsel then prepares a report recommending what action should be taken. 11 C.F.R. § 111.16. Upon consideration of the briefs and report, the Commission determines whether or not there is "probable cause to believe" a violation has occurred. 2 U.S.C. § 437g(a)(4)(A)(i). If four or more Commissioners find probable cause, the Commission must

attempt to resolve the matter by "informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement" with the respondent involved.  *Id.*

If the Commission cannot resolve the matter through voluntary conciliation, the Commission is authorized to file a *de novo* civil suit in district court to enforce the Act.  The decision to authorize a civil enforcement suit against the respondents is discretionary and must be approved by a vote of at least four Commissioners.  *See* 2 U.S.C. §§ 437c(c); 437g(a)(6)(A).

### C.     Suits by Administrative Complainants Pursuant to 2 U.S.C. § 437g(a)(8)

The FECA permits administrative complainants to challenge the agency's handling of their complaints in two limited situations.  If the Commission determines that no violations occurred, decides to take no further action, or dismisses the complaint for some other reason, the complainant may seek judicial review pursuant to 2 U.S.C. § 437g(a)(8)(A).  That statutory provision also allows a party who has filed an administrative complaint to bring a civil action in the event of "a failure of the Commission to act" on the complaint within 120 days.  2 U.S.C. § 437g(a)(8)(A).

If a court finds that the Commission's dismissal or failure to act was "contrary to law," it may order the Commission to conform to the court's decision within 30 days.  2 U.S.C. § 437g(a)(8)(C); *see In re National Congressional Club*, 1984 WL 148396, at *1 (D.C. Cir. 1984); *FEC v. Rose*, 806 F.2d 1081, 1084 (D.C. Cir. 1986).  If the Commission fails to conform within that period, the administrative complainant may bring a civil action to remedy the alleged violation.  2 U.S.C. § 437g(a)(8)(C); *see FEC v. National Conservative Political Action Comm.*, 470 U.S. 480, 488 (1985).

D.    **The Administrative History of This Case**

On August 13, 2007, Senator McCain submitted to the Commission his Candidate

Agreement and Certification for payments under the Matching Payment Act for the Republican

presidential primary elections.  Compl. ¶ 34.  The FEC announced on December 20, 2007, that it

had certified primary matching funds to Senator McCain.  *Id.* ¶ 35.

In a letter dated February 6, 2008, Senator McCain purported to withdraw from the

Matching Payment Act program.  Compl. ¶ 38.  On February 19, FEC Chairman David Mason,

on behalf of the agency, responded in writing that Senator McCain's February 6 letter would be

treated as a request to withdraw, which would require the approval of at least four

Commissioners.  *Id.* ¶ 39.

On February 25, 2008, the DNC filed an administrative complaint with the FEC against

Senator McCain and John McCain 2008, Inc., his presidential campaign committee.  The

complaint alleged that Senator McCain's purported withdrawal from the Matching Payment Act

program violated the statute, and that the campaign had violated or soon would violate the

statute's overall spending limit.  Compl. ¶ 5.  Plaintiffs brought this action 49 days later.

## III.    THE COURT'S JURISDICTION

The Court has an "independent obligation to determine whether subject-matter

jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y & H Corp.*,

546 U.S. 500, 514 (2006); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93 (1998)

(holding that the court must examine jurisdictional issues before merits); *Eisenbeiser v. Chertoff*,

448 F. Supp. 2d 106, 109 (D.D.C. 2006) ("As a court of limited jurisdiction, a federal district

court has an affirmative obligation to examine, *sua sponte*, its jurisdiction to hear a case.");

*Burlington Res. Oil & Gas Co. v. Dep't of the Interior*, 21 F. Supp. 2d 1, 4 n.4 (D.D.C. 1998)

("[A] court may *sua sponte* consider questions related to its jurisdiction, even if raised for the first time by *amici*."). Moreover, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514.

### A.    Jurisdictional Timing Requirement in 2 U.S.C. § 437g(a)(8)

In this case, 2 U.S.C. § 437g(a)(8)(A) does not authorize any federal court action on FEC administrative complaints until the Commission dismisses the complaint or 120 days pass from its filing date. Plaintiffs' suit was filed 49 days after the DNC's administrative complaint. The D.C. Circuit has held that expiration of the 120-day time period is a jurisdictional precondition to challenges brought under section 437g(a)(8). *Perot v. FEC*, 97 F.3d 553, 558 (D.C. Cir. 1996); *In re Carter-Mondale Reelection Comm., Inc.*, 642 F.2d 538, 542 (D.C. Cir. 1980).

At this time, jurisdiction over the DNC's administrative complaint rests with the Commission. *See* 2 U.S.C. §§ 437c(b)(1) ("The Commission shall have exclusive jurisdiction with respect to the civil enforcement of such provisions."), 437d(e), 437g; *In re Carter-Mondale*, 642 F.2d at 545. Congress intended "[t]he delicately balanced scheme of procedures and remedies set out in the [FECA] . . . to be the exclusive means for vindicating the rights and declaring the duties stated therein." 120 Cong. Rec. 35,314 (1974). To that end, "the exclusive jurisdiction of the FEC extends to assure that the Commission's initial investigation is completed, or the statutory time limit allowed for an investigation has expired, before any judicial review is invoked." *In re Carter-Mondale*, 642 F.2d at 542. The purpose is "not only to allow development of the record, but also because the FEC's resolution of this matter may be satisfactory to all concerned and thereby preclude the need for any appellate consideration." *Id.* at 542-43 (recognizing Congress's preference for conciliation of campaign finance violations without resort to litigation). Moreover, even if a court were to find that the FEC's alleged inaction was "contrary to law," the statute requires that the Commission receive 30 days to

comply before an administrative complainant may receive a private right of action.  2 U.S.C. § 437g(a)(8)(C).[3]

In the similar *Carter-Mondale* case, the D.C. Circuit made clear that federal courts lack the power to consider FEC delay cases filed less than 120 days after an administrative complaint is made.  In that case, the Carter-Mondale committee had filed an administrative complaint against Ronald Reagan and the yet-to-be-nominated vice-presidential candidate alleging violations of the FECA and the Presidential Election Campaign Fund Act.  642 F.2d at 539-40.  Only 21 days later, the Carter-Mondale committee petitioned the D.C. Circuit for mandamus, prohibition, and injunctive relief against the FEC.  *Id.*  The court denied relief, concluding "that the entire matter at this time is within the exclusive jurisdiction of the Federal Election Commission."  *Id.* at 542.  The court explained that judicial intervention during an FEC investigation would not only interfere with the Commission's role in building a factual record, but would also "fly directly into the face of the statutory scheme that Congress provided in the applicable statutes."  *Id.*

Moreover, the D.C. Circuit has found no jurisdiction to consider unreasonable delay cases brought within the 120-day period even when a plaintiff alleged irreparable harm and claimed an urgent need for relief.  In *Perot*, the plaintiffs were third-party presidential and vice-presidential candidates who filed FEC administrative complaints challenging the selection criteria used for debate participants.  97 F.3d at 555.  Just days after filing their administrative complaints, the plaintiffs brought suit contending that their exclusion from the upcoming debates

---

[3]     In fact, mindful of the extensive investigation and agency procedures that the FECA's administrative enforcement process often requires, the D.C. Circuit has rejected an unreasonable delay claim in a case involving an FEC investigation that was not resolved within two years of the complaint filing.  *Rose*, 806 F.2d at 1091 n.17 ("[T]he fact that the investigation took approximately two years does not, standing alone, violate a rule of reason.").

violated the First Amendment and would irreparably injure them. *Id.* at 557-58. The court

granted the FEC's motion to dismiss, holding that "Congress could not have spoken more plainly

in limiting the jurisdiction of federal courts to adjudicate claims under the FECA," and that

"[s]ince the FEC is given 120 days to act on a submitted complaint, § 437g(a)(8)(A), its delay in

this case is neither unlawful nor unreasonable." *Id.* at 559.

Plaintiffs admit (Compl. ¶ 6) that the FECA only permits delay suits to be brought 120

days after the filing of the administrative complaint, but they claim that the requirement "need

not be followed in extraordinary circumstances, where the pursuit of a remedy from the FEC

would be futile." The DNC provides no legal support for this claim. In fact, while the

Commission lacks a quorum today to find reason to believe the Act has been violated, plaintiffs

cannot show that this situation will persist 120 days after the filing of the DNC's administrative

complaint; likewise, even if this Court were ultimately to find the Commission had acted

"contrary to law," the quorum issue may be resolved within 30 days of such a finding.

### B.    Plaintiffs' Standing

Federal courts are "under an independent obligation to examine . . . standing," which is

"perhaps the most important of [the jurisdictional] doctrines." *FW/PBS, Inc. v. City of Dallas*,

493 U.S. 215, 231 (1990) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984) (internal quotation

marks omitted)) (raising issue of standing *sua sponte*). "[I]t is the burden of the party who seeks

the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a

proper party to invoke judicial resolution of the dispute." *Id.* (citations omitted). To establish

standing under Article III, a plaintiff must show three things:

> first, [that it has] suffered an injury in fact . . . Second, there must be a causal
> connection between the injury and the conduct complained of . . . Third, it
> must be likely, as opposed to merely speculative, that the injury will be
> redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

"Section 437g(a)(8)(A) does not confer standing; it confers a right to sue upon parties who otherwise already have standing." *Common Cause v. FEC*, 108 F.3d 413, 419 (D.C. Cir. 1997). Here, there are several questions about plaintiffs' standing that the Court must resolve before it can exercise jurisdiction in this case:

1.    Neither plaintiff is a candidate who competes with Senator McCain. In *Gottlieb v. FEC*, 143 F.3d 618, 619 (D.C. Cir. 1998), a political action committee and individual voters brought an action under 2 U.S.C. § 437g(a)(8) challenging the Commission's dismissal of their administrative complaint, which claimed that President Bill Clinton's 1992 campaign committee illegally transferred contributions earmarked for the primary elections into its general election legal and accounting compliance fund. The court found that the committee lacked standing because it could not show competitive injury, reasoning that political committees are ineligible to receive Matching Payment Act funds and do not "compete[] in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit." *Id.* at 621 (quoting *In re United States Catholic Conference*, 885 F.2d 1020, 1029 (2nd Cir. 1989)).

2.    Plaintiffs' alleged harm, if any, has been caused by the way the Democratic presidential primary campaign has developed, not any FEC inaction. Plaintiffs allege (Compl. ¶ 22) that "because the contest for the Democratic nomination is continuing[,] . . . the candidates for the nomination are expending most of their resources in the campaign to secure the nomination rather than on communications and activities to oppose the election of the presumptive Republican nominee, Senator McCain." Plaintiffs then connect these facts with their alleged need (*id.* ¶ 25) to raise and spend more money than they otherwise would. Since the

remaining Democratic contenders are not receiving matching funds, plaintiffs' alleged harm appears to be caused by the continuing Democratic nomination contest, not the FEC's actions or a difference in how the three major contenders are situated regarding participation in the matching fund program.  *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) (Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").

3.    The DNC Services Corporation did not file the underlying administrative complaint at issue in this case.  The Democratic National Committee was the only administrative complainant, and only that party can bring suit under 2 U.S.C. § 437g(a)(8).  *See* Compl. ¶ 5. "While the statute provides for judicial relief from Commission administrative actions, the plain language of the statute makes clear that it is only available to parties to the administrative complaint."  *Judicial Watch, Inc. v. FEC*, 293 F. Supp. 2d 41, 44-45 (D.D.C. 2003) (dismissing with prejudice the claims asserted by a plaintiff that was not part of the administrative complaint that gave rise to the litigation).

## CONCLUSION

Although the Commission at this time does not have four members to vote to defend this action, the Court has an independent obligation to determine that it has jurisdiction to hear this case.

Respectfully submitted,

Thomasenia P. Duncan (D.C. Bar No. 424222)
General Counsel

David Kolker (D.C. Bar No. 394558)
Associate General Counsel

Harry J. Summers
Assistant General Counsel

/s/  Michael T. Liburdi
Michael T. Liburdi
Attorney

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

Dated:  April 28, 2008