UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, et unum,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>FEDERAL ELECTION COMMISSON,<br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 08-0639 (JDB)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE TO ORDER TO
SHOW CAUSE WHY THIS COURT HAS JURISDICTION**

Plaintiffs Democratic National Committee and DNC Services Corporation (collectively, the "DNC") hereby respond to the Court's Order of May 2, 2208 to show cause why the case should not be dismissed for want of subject matter jurisdiction under the private right of action provision of the Federal Election Campaign Act of 1971 as amended ("FECA"), 2 U.S.C. § 437g(a)(8). That statutory provision prevents the Court from interfering with the jurisdiction of the Federal Election Commission ("FEC" or "Commission") for 120 days after an administrative complaint is filed to enforce the FECA. For four related reasons, the Complaint should not be dismissed.

First, the statute does *not* require an aggrieved party to wait 120 days before *filing* a complaint in this Court. Rather the statute requires that the FEC be provided 120 days to act on an administrative complaint before the Court issues any order. The DNC is *not* asking this Court to issue an order prior to the 120-period of exclusive FEC jurisdiction. The DNC does not expect the FEC to respond to the Complaint until the expiration of the 120-day period, which

will occur one day after the response is due, and the DNC will not ask this Court to review the FEC's inaction until after that period has in fact fully expired. Accordingly, this Court would not be interfering with the FEC's exclusive authority during the 120-day period merely by retaining jurisdiction over the Complaint.

Second, the lack of four FEC Commissioners, as described in the FEC's Statement Regarding the Commission's Status filed with this Court on April 28, 2008 ("FEC Stmnt."), has prevented and continues to prevent the FEC from fulfilling its enforcement responsibility to investigate and correct the violations of law described in the DNC's administrative complaint. Because the FEC cannot take action on the DNC administrative complaint until the agency has at least four Commissioners, it would be futile for this Court to dismiss the Complaint to give the FEC more time to act.

Third, the dual purposes of § 437g(a)(8) are to prevent the FEC from shirking its responsibility to enforce FECA and to prevent judicial interference for 120 days while the FEC is acting on administrative complaints. Dismissing the Complaint at this juncture would frustrate the purposes of § 437g(a)(8) because such dismissal would unnecessarily delay judicial review at the end of the 120 day period, while retaining jurisdiction over the Complaint will not interfere with the FEC's ability to take enforcement to correct the violation described in the administrative complaint.

Fourth, it would be a waste of judicial resources and those of the parties to dismiss this Complaint and require the Plaintiffs to re-file the same allegations when the underlying facts will not change in the next two months.

## BACKGROUND

On February 25, 2008, the DNC filed an administrative complaint with the FEC alleging that Senator John McCain and his presidential campaign committee, John McCain 2008, Inc., violated the Presidential Primary Matching Payment Account Act, 26 U.S.C. § 9031 *et seq.*, and the FEC's regulations implementing that law, by failing to comply with the statutory spending limits and other requirements imposed on candidates for President who commit themselves to participation in the public matching funds program in seeking their Party's nomination. Compl. ¶ 5; *see also* FEC Stmnt. at 3-4.  The DNC's administrative complaint asked the FEC to conduct an investigation, find a violation, and take appropriate enforcement action to correct the violation.  *Id.*  Because FECA limits the FEC's ability to act expeditiously, any delay would inhibit the FEC from fulfilling these responsibilities in a timely manner before the Republican National Convention in September 2008, when Senator McCain will become his Party's nominee and his compliance with the spending limit, applicable only during the nominating process, will become moot. *See* FEC Stmnt. at 4-5 (describing statutory time constraints on the FEC before it can initiate enforcement action).

The FEC admits that "Section 437c(c) provides that certain Commission actions require the 'affirmative vote of 4 members' and then specifies several of those actions."  FEC Stmnt. at 2.  "Under 2 U.S.C. § 437c(a), the Commission was established as a six-member body, and no more than three members 'may be affiliated with the same political party.' Currently, the Commission has only two Commissioners (affiliated with different political parties), so it cannot meet any four-vote requirements under the Act. It is unknown whether the Commission will have a quorum by the time its answer is due in this case."  *Id.*

The FEC has had only two Commissioners since January 1, 2008. Four votes are needed for all enforcement actions. 2 U.S.C. § 437g; *see also* FEC Stmnt. at 4-5. Thus, the FEC cannot fulfill its enforcement responsibilities at this time. Indeed, as the FEC admits, it cannot even *initiate* an investigation of the DNC's administrative complaint because at least four Commissioners must vote to find "'reason to believe' a violation has occurred," before the FEC can initiate an investigation. FEC Stmnt. at 4 (citing 2 U.S.C. § 437g(a)(2)).

The DNC filed this Complaint on April 14, 2008 and immediately served the FEC, the U.S. Attorney and the Attorney General. The Complaint asks this Court to find that the FEC has failed to act on the plaintiffs' administrative complaint as required by FECA and to issue an appropriate order.

Under Fed. R. Civ. P. 12(a)(3)(A), the FEC's response to the Complaint filed in this Court will be due 60 days after the last date of service, which will be June 23, 2008. The statutory period of exclusive FEC jurisdiction will expire 120 days after the administrative complaint was filed, which is 120 days after February 25, 2008, on June 24, 2008. Thus, the FEC's Answer to the Complaint is due one day before the expiration of the 120-day period specified in section 437g(a)(8).

On April 28, 2008, the FEC filed its Statement Regarding the Commission's Status and the Court's Jurisdiction, in which, among other things, it suggested that this Court should *sua sponte* dismiss the Complaint pursuant to § 437g(a)(8). "In this case, 2 U.S.C. § 437g(a)(8)(A) does not authorize any federal court action on FEC administrative complaints until the Commission dismisses the complaint or 120 days pass from its filing date." FEC Stmnt. at 7.

On May 12, 2008, this Court then issued an Order to "show cause why this action should not be dismissed for want of jurisdiction in light of 2 U.S.C. § 437g(a)(8)(A) and the D.C.

4

Circuit's decisions in *Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996), and *In re Carter-Mondale Reelection Comm., In*c., 642 F.2d 538 (D.C. Cir. 1980)."

## DISCUSSION

The statute conferring subject-matter jurisdiction on this Court provides that:

> Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia.

2 U.S.C. § 437g(a)(8)(A).  Section 437g(a)(8)(C) then provides that:

> In any proceeding under this paragraph the court may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint.

I.   **The Statute Prevents This Court From Issuing An Order Within the 120 Day Period But Does Not Prevent an Aggrieved Party From Filing a Complaint Before the Expiration of That Period**

As the FEC correctly explains in its Statement, "In this case, 2 U.S.C. § 437g(a)(8)(A) does not authorize any *federal court action* on FEC administrative complaints until the Commission dismisses the complaint or 120 days pass from its filing date." FEC Stmnt. at 7 (emphasis added).  The statutory provision, by its terms, does not require an aggrieved party to wait 120 days before *filing* a petition with this Court.  It precludes this Court from granting any relief under such a Complaint by issuing any order to the FEC, before expiration of that period. In this case, however, the DNC has not asked, and does not intend to ask, that this Court take any action until at least June 24, 2008, 120 days after the filing date of the DNC administrative complaint.  The DNC readily concedes that the Court would have no jurisdiction to take any

5

such action before that time.  The language of § 437g(a)(8) does not, however, require the DNC to wait 120 days before filing a Complaint with this Court. .

Not only does the language of § 437g(a)(8) require such a delay, neither does the purpose of that statutory provision. The purpose of "the failure to act" provision in § 437g(a)(8) is to give the FEC an opportunity to complete its statutory responsibilities without having a court review any interim agency decisions or otherwise interfere with the agency's administrative enforcement process.  "In describing the failure to act provision in the 1979 amendments, Senator Pell, Chairman of the Committee on Rules and Administration, which reported the Senate bill, stated: 'The Commission is entrusted with the responsibility of passing on complaints. . . . And to assure that the Commission does not shirk its responsibility to decide that [the judicial review] section provides that a total failure to act within 120 days is a basis for court action. But [this basis] for judicial intervention [is] not intended to work a transfer of prosecutorial discretion from Commission to the courts.'" *Democratic Senatorial Campaign Comm. v. FEC ("DSCC")*, 1996 U.S. Dist. LEXIS 22849, *24-25 (D.D.C. Apr. 17, 1996) (citing 125 Cong. Rec. S19099 (daily ed., Dec. 18, 1979)).

In *Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996), and *In re Carter-Mondale Reelection Comm., Inc.*, 642 F.2d 538 (D.C. Cir. 1980), the District of Columbia Court of Appeals confirmed that § 437g(a)(8) constrains this Court's ability to correct FEC inaction for a limited period.  However, those decisions did not address the issue of whether an aggrieved party could file a Complaint in this Court before expiration of the 120-day period, when the FEC would not have to answer the Complaint and no action would be requested of the Court before such expiration had occurred. "Congress could not have spoken more plainly in limiting the jurisdiction of federal courts to adjudicate claims under the FECA. The statute explicitly states

that 'except as provided in section 437g(a)(8) of this title, the power of the [FEC] to initiate civil actions under subsection (a)(6) shall be the exclusive civil remedy for the enforcement of the provisions of this Act.'" *Perot*, 97 F.3d. at 557-58 (citing 2 U.S.C. § 437d(e)).  In other words, section 437g(a)(8) "allows the Commission a maximum period of 120 days, beginning from the date the complaint is filed, in which to conduct its investigation *without judicial intrusion*." *In re Carter-Mondale*, 642 F.2d at 543; *Perot*, 97 F.3d. at 558 (emphasis added).  During the 120-day period, the entire case "is within the exclusive jurisdiction of the Federal Election Commission." *In re Carter-Mondale*, 642 F.2d at 542; *Perot,* 97 F.3d at 558.

Therefore, § 437g(a)(8) only prevents this Court from ordering the FEC to act during the 120-day period after the administrative complaint has been filed.  However, the "failure to act" provisions do not require the aggrieved party, here the DNC, to wait 120 days to file a complaint with this Court.  Because the DNC has not asked this Court to issue any order or to take any action interfering with the Commission's enforcement process until 120 days have lapsed, this Court has subject matter jurisdiction over the Complaint.

**II.     Even If § 437g(a)(8) Required an Aggrieved Party to Wait 120 Days Before Filing a Complaint With This Court, Complying With That Requirement Would Be Futile in the Extraordinary Circumstances of This Case**

The fundamental purpose of the 120-day statutory period of exclusive agency jurisdiction in section 437g(a)(8) is to provide the FEC with a reasonable period of time to complete its enforcement procedures.  *DSCC*, 1996 U.S. Dist. LEXIS 22849 at *23-25.  In the extraordinary circumstances presented here, compelling the DNC to wait until June 24, 2008 to file its Complaint in this Court would not further that purpose.  At this time, the FEC cannot even commence its administrative enforcement procedure because it lacks the necessary number of Commissioners even to take a vote to initiate an investigation.  FEC Stmnt. at 4.  For this reason,

7

even if the language of section 437g(a)(8) were interpreted to require the DNC to wait 120 days before filing its Complaint in this Court, the doctrine of futility would relieve the DNC of meeting that requirement.

The doctrine of futility in administrative proceedings is a narrow one, but in unprecedented circumstances such as those presented here, it should be applied. In *Perot* and *Carter-Mondale,* the FEC was *already in the process* of investigating the administrative complaints at the time that the plaintiffs sought review in this Court, and the plaintiffs were thus seeking to replace the FEC enforcement process. *See Perot*, 97 F.3d at 558-59; *In re Carter-Mondale*, 642 F.2d at 542-43. By contrast, in this case, the FEC is not conducting any enforcement proceeding and is unable to fulfill its enforcement responsibilities because the agency currently lacks the authority even to commence an investigation of the administrative complaint. FEC Stmnt at 4-5. In *Carter-Mondale,* the Court held that judicial intervention while the FEC was in the process of fulfilling its statutory duties would "fly directly into the face of the statutory scheme that Congress provided." *In re Carter-Mondale*, 642 F.2d at 542. By contrast, if there were ever a case to present the type of unique and "extraordinary circumstances" allowing a party to "hurdle the explicit time restraints" of FECA, *Perot*, 97 F.3d at 558 (quoting *In re Carter-Mondal*e, 642 F.2d at 543), this case would be it. *See also Hagelin v. FEC*, 1996 Westlaw 566762, *4 (D.D.C. Oct. 1, 1996) (Hogan, J., from the bench) ("I believe that the Court may be able in certain extraordinary circumstances to hear a case if the pursuit of the FEC remedy would be futile.").

To be sure, the *Perot* Court cautioned that the Supreme Court held *after* the *Carter-Mondale* case that if "Congress specifically mandates, exhaustion is required." *Perot*, 97 F.3d at 559 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). However, the statutory

8

provision for a private right of action in § 437g(a)(8)(A) sets out *two separate avenues* for seeking judicial review, only *one* of which requires exhaustion of remedies and a final agency decision. The statute allows a party to seek review in this Court after the FEC has dismissed an administrative complaint. But it also expressly allows a party to seek review if the FEC has failed to act within a certain period of time—*i.e.*, in the *absence* of final agency action. By its terms, then, this statutory review provision does *not* mandate exhaustion of the administrative remedy.

In view of the current extraordinary circumstances in which the FEC is unable to function, it would be futile for the plaintiffs to await the expiration of the 120-day statutory jurisdiction period before seeking judicial review. Accordingly, this Court is not required to dismiss this Complaint.

**III.   Dismissing the Complaint Would Frustrate the Purposes of Section 437g(a)(8)**

As described above, the complementary purposes of the 120-day waiting period in § 437g(a)(8) are (1) to provide the FEC with reasonable time to complete its enforcement procedures and (2) to ensure the FEC does not shirk its duty by failing to act. *DSCC*, 1996 U.S. Dist. LEXIS 22849 at *23-25. Because the FEC lacks a sufficient number of Commissioners to perform its statutory duties—it cannot initiate investigations unless four Commissioners find reason to believe a violation has occurred—the agency is incapable of acting. Therefore, dismissing the Complaint, which would delay judicial review for at least two months until a new complaint can be filed, will not change the status of the DNC's administrative complaint because the FEC cannot complete an investigation that it cannot begin in the first place. Alternatively, if this Court retains jurisdiction over this case and proceeds in an orderly manner after the 120-day

period to resolve the issues raised in the Complaint, the Court will foster the second purpose of § 437g(a)(8): to ensure that the FEC does not shirk its duty to act on administrative complaints.

It is particularly necessary for the Court and the FEC to proceed prudently and diligently in these circumstances, in which a presidential candidate is continuing to violate the statutory spending limits and the period during which those limits apply will end in September, only four months away. Yet the FEC itself has conceded that it cannot act at all. As the Court held in *DSCC*, 1996 U.S. Dist. LEXIS 22849 at *24-25:

> [W]hile there are no specific deadlines to prod the FEC to forward administrative complaints to the Commissioners for "reason to believe" determinations, it is clear that the agency must nevertheless act reasonably, determination of which includes consideration of the underlying statutory purposes. The absence of a specific requirement in the Act that the Commissioners make their finding within a certain time period is not the equivalent of unfettered FEC discretion to determine its own time line. Public confidence in our democratic electoral system, which the Act seeks to protect, turns on investigations that are conducted within a reasonable time and on effective enforcement. The deterrent value of the Act's enforcement provisions are substantially undermined, if not completely eviscerated, by the FEC's failure to process administrative complaints in a meaningful time frame. *See* [Michael W. Carroll, *When Congress Just Says No: Deterrence Theory and the Inadequate Enforcement of the Federal Election Campaign Act*, 84 Geo. L.J. 551, 571-83 (1996)] (criticizing effectiveness of FEC to deter FECA violations, in part, because sanctions, if any, frequently come after an election).

The FEC's inability to act on a complaint concerning a presidential candidate's violation of spending limits is the prototypical example of a case that undermines the public's confidence in the electoral system. Congress enacted section 437g(a)(8) to prevent this loss of public confidence by entrusting this Court with the power to review the FEC's actions and to provide a private right of action in appropriate situations in which the FEC has failed to act.

Only about four months remain before the Republican National Convention when the Republican Party's nominating process will be concluded and Senator McCain can no longer actually be compelled to comply with the requirements of the public matching funds program

(although civil penalties could be later assessed for those violations). Dismissing this case now and requiring the plaintiffs to re-file the same Complaint in a few months would simply decrease the amount of time available to the Court to provide meaningful relief. A failure to correct this violation before the election would frustrate Congress' intent that the campaign finance laws be enforced in a timely and efficient manner, as well as undermine the public's confidence in the campaign finance system and the Government's ability to enforce compliance by presidential candidates.

### IV. Dismissing This Case Will Unnecessarily Waste Judicial Resources

A fundamental principle codified in the first rule of the Federal Rules of Civil Procedure is that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Dismissing the case at this juncture will undermine this principle and force the plaintiffs to expend resources to re-file and re-serve this case in two months. The Court itself will expend resources re-docketing this case and the U.S. Attorney, the Attorney General and the FEC will expend administrative resources accepting service and administering a new case. The time lost will not result in any change in the circumstances surrounding the plaintiffs' administrative complaint

The only difference between dismissing this case and not dismissing this case will be to provide the FEC with another 60-day period to submit an answer or file a Rule 12(b) motion, a time period during which the agency has already admitted that it lacks the authority to fulfill its enforcement responsibilities regarding the administrative complaint. As evident by the FEC's Statement, it apparently intends to test the plaintiffs' standing by filing a motion to dismiss before substantively defending the agency's admitted inaction. Since the FEC has already briefed this standing issue, granting the FEC another 60 days from the re-filing of the Complaint

to file a motion to dismiss would unnecessarily delay the final resolution of this issue. On the other hand, the FEC is not prejudiced by being required to answer or file a motion in response to this Complaint. In the circumstances here, where a presidential candidate has and is continuing to violate the spending limit with which he agreed to comply and any effective remedy must be implemented quickly, a 60-day litigation delay would impose unnecessary pressure on this Court, subsequent courts, and the parties to resolve the issues in both this Complaint and the administrative complaint before the ability to undertake corrective action becomes moot..

The DNC has no objection to a reasonable extension for the FEC to answer this Complaint so that the agency will not be required to prepare any response until after expiration of the full 120-day statutory period. However, it would be inconsistent with a timely and efficient resolution of this case to require the Plaintiffs to re-file the same allegations. Thus, dismissing the Complaint would unnecessarily waste judicial resources and those of the parties.

**CONCLUSION**

      For the reasons set forth above, the Court has subject-matter jurisdiction over this action and the case should not be dismissed.

May 12, 2008                                                            Respectfully submitted,

                                                              /s/ Joseph E. Sandler

                                         Joseph E. Sandler,
                                         D.C. Bar No. 255919
                                         John Hardin Young
                                         D.C. Bar No. 190553
                                         Stephen E. Hershkowitz
                                         D.C. Bar No. 282947

                                         SANDLER, REIFF & YOUNG, P.C.
                                         300 M Street, S.E., Suite 1102
                                         Washington, D.C. 20003
                                         (202) 479-1111 (telephone)
                                         (202) 479-1115 (facsimile)
                                         Sandler@sandlerreiff.com

                                         Attorneys for Plaintiffs